## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID VASQUEZ RAMIREZ,** | * | |
| | * | |
| **Plaintiff** | | |
| | * | |
| **v.** | | **CIVIL NO. JKB-14-2168** |
| | * | |
| **AMAZING HOME** | | |
| **CONTRACTORS, INC.,** *et al.* | * | |
| | | |
| **Defendants** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

David Vasquez Ramirez ("Mr. Ramirez") brought this suit against Amazing Home Contractors, Inc. ("AHC") and James Ryder, Jr. ("Mr. Ryder") for violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-503 *et seq.* AHC and Mr. Ryder filed an answer, and AHC filed a counterclaim alleging that Mr. Ramirez had committed fraud. (ECF No. 5.)   Now pending before the Court is Mr. Ramirez's motion to dismiss AHC's counterclaim for failure to state a claim, or in the alternative, for lack of jurisdiction. (ECF No. 8.)   The issues have been briefed (ECF Nos. 8, 10, 12), and no hearing is required, Local Rule 105.6.   For the reasons explained below, Mr. Ramirez's motion to dismiss AHC's counterclaim will be GRANTED.

A.     **BACKGROUND**[1]

AHC is a roofing contractor "formed under the laws of the State of Maryland" (ECF No. 5 at 9 ¶ 3), and Mr. Ryder is an owner of AHC, (*Id.* ¶ 4).  Mr. Ramirez was formerly employed by AHC, and he resides in Maryland.  (*Id.* ¶¶ 4, 6; ECF No. 1 ¶ 1.)

In February 2013, Mr. Ramirez applied to work for AHC.  (ECF No. 5 ¶ 5.)  Mr. Ramirez filled out an Application for Employment and an I-9 form "attesting that he was a 'lawful permanent resident,'" and produced a Permanent Resident Card.  (*Id.* ¶¶ 5-6.)  On the basis of this information, AHC hired Mr. Ramirez to work as a roofer.  (*Id.* ¶ 7.)  In May 2013, the Department of Homeland Security ("DHS") audited AHC's labor force and determined that seven of AHC's employees—including Mr. Ramirez—had provided insufficient employment eligibility verification.  (*Id.* at 9-10 ¶ 8; *see also* ECF No. 5-1 ("Notice of Suspect Documents" letter from DHS).)  Soon thereafter, AHC terminated Mr. Ramirez's employment.  (ECF No. 5 at 10 ¶ 11.)  AHC lost a contract and other business opportunities "as a result of having to abruptly terminate Mr. Ramirez." (*Id.* ¶ 12.)

On July 7, 2014, Mr. Ramirez filed this suit, alleging that AHC and Mr. Ryder failed to pay wages owed in violation of the FLSA, the MWHL, and the MWPCL.  (ECF No. 1.)  On August 14, AHC and Mr. Ryder filed their Answer to Mr. Ramirez's Complaint.  (ECF No. 5.)  Along with the Answer, AHC filed a counterclaim alleging that Mr. Ramirez committed fraud when he represented that he was eligible to work in the United States.  (*Id.*)  On September 8, Mr. Ramirez filed this motion to dismiss AHC's counterclaim for failure to state a claim, and in the alternative for lack of jurisdiction.  (ECF No. 8.)

---

[1] The Court here recounts the facts as alleged by AHC, the non-moving party.  *See Hutcherson v. Washington Metro. Area Transit Auth.*, 2009 WL 2168998, at *1 (D. Md. 2009).

**B.   LEGAL   STANDARD**

The burden of proving subject-matter jurisdiction is on the claimant.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting challenge may be either facial (*i.e.*, complaint fails to allege facts upon which subject-matter jurisdiction can be based) or factual (*i.e.*, jurisdictional allegations of complaint are not true)).  *See also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (same).

**C.   ANALYSIS**

For the reasons described below, the Court finds that AHC has raised a permissive counterclaim with no independent basis for federal jurisdiction.  The Court cannot exercise jurisdiction over such counterclaims, and thus AHC's counterclaim must be dismissed.

**1.  Compulsory v. Permissive**

A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  In contrast, a permissive counterclaim is any counterclaim that is not compulsory.  Fed. R. Civ. P. 13(b).  The Fourth Circuit considers four inquiries when assessing whether a counterclaim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? And (4) Is there any logical relationship between the claim and counterclaim? A court need not answer all these questions in the affirmative for the counterclaim to be compulsory.  Rather, the tests are less a litmus, more a guideline.

*Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) (citations omitted).

First, the issues of fact and law raised in Mr. Ramirez's complaint and AHC's counterclaim are not "largely the same."  The claims seek relief under markedly different law. Mr. Ramirez's claims arise out of explicit statutory grants: Count I asserts a violation of the FLSA; Count II asserts a violation of the MWHL; and Count III asserts a violation of the MWPCL.  AHC's sole counterclaim is a creature of Maryland common law, a fraud claim.

The claims also raise distinct issues of fact, and involve distinct periods of time in the relationship between Mr. Ramirez and AHC.  Mr. Ramirez's claims seek unpaid wages for work that Mr. Ramirez has allegedly *already performed*.  At trial, these claims will raise factual questions such as: When, if ever, did Mr. Ramirez work more than forty hours in a given week, and exactly how many hours did he work during those weeks?  How much did AHC pay Mr. Ramirez during those weeks?  When did Mr. Ramirez stop working, and was he paid for every day worked during his final days of employment?

AHC's counterclaim, however, seeks damages for Mr. Ramirez's failure to work *after his employment had been terminated*.  At trial, AHC's counterclaim will involve facts related to two distinct time periods.  First, it will raise questions about Mr. Ramirez's hiring: Did Mr. Ramirez misrepresent his immigration status during the employment application process and did he use fraudulent documents to secure his employment?  Did Mr. Ramirez have knowledge that the documents were fraudulent?  Did AHC rely on those documents?  Second, AHC's counterclaim will raise questions about Mr. Ramirez's termination:  Was AHC forced to turn down work as a result of Mr. Ramirez's departure?  How much work was AHC forced to turn down?  To what extent is Mr. Ramirez responsible for AHC's lost business?

AHC incorrectly asserts that Mr. Ramirez's claims and AHC's counterclaim necessarily involve similar facts about *when* and *why* Mr. Ramirez was terminated.  AHC's rationale for *why*

it decided to terminate Mr. Ramirez's employment is irrelevant to Mr. Ramirez's claims; Mr. Ramirez does not raise a wrongful termination suit, but merely seeks payment for work performed *before* he was terminated.  Further, AHC's counterclaim for fraud will only require a minimal inquiry into *when* Mr. Ramirez was terminated, and only to determine what contracts and business opportunities AHC lost *after* and as a result of Mr. Ramirez's termination.

The facts in this case are comparable to *Williams v. Long*, 558 F. Supp. 2d 601 (D. Md. 2008), where the court dismissed a similar counterclaim.  Plaintiffs brought claims against their employer, a bakery owner, for unpaid wages under the FLSA, MWPCL, and Baltimore City's Wage and Hour Law.  *Williams*, 558 F. Supp. 2d at 602.  The bakery owner filed counterclaims alleging breach of contract, breach of fiduciary duty, and invasion of privacy.  *Id.*  The court noted that "while plaintiffs' claims will focus on the factual issues of how many hours plaintiffs worked, and whether they were paid for that work, defendant's counterclaims would require extensive factual investigation into allegations of false representation, reliance, and emotional distress . . . ."  *Id.* at 604.  For these reasons, the court found that the factual and legal issues raised by the plaintiffs and the bakery owner were *not* "largely the same."  *Id.* at 605.

Likewise, Mr. Ramirez's claims and AHC's counterclaim fail to share largely the same issues of law or fact, and thus this inquiry weighs against finding that AHC's counterclaim is compulsory.

Second, res judicata would not bar a subsequent suit on AHC's counterclaim.  Under Maryland law, a subsequent claim may be barred by claim preclusion, or res judicata, if three elements are met: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been determined in prior litigation; and (3) there was a final

judgment on the merits in the prior litigation." *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008).

Element #1 of res judicata will likely be satisfied if AHC raises this fraud claim in a subsequent suit.  Mr. Ramirez's claims and AHC's counterclaim involve the same three parties: Mr. Ramirez, AHC, and Mr. Ryder.  The Court also expects to eventually issue a final judgment on the merits of Mr. Ramirez's claims, and so Element #3 of res judicata is satisfied.  However, AHC's fraud claim does not satisfy Element #2; as discussed above, the fraud claim is not identical to Mr. Ramirez's claims for unpaid wages.  The Court's resolution of Mr. Ramirez's claims will have no impact on AHC if it chooses to pursue a subsequent fraud claim.  Thus, this inquiry also weighs against finding that AHC's counterclaim is compulsory.

Third, Mr. Ramirez's claims and AHC's counterclaim will not be supported by substantially the same evidence.  Mr. Ramirez's claims will rely on "records of all hours that [Mr. Ramirez] worked while in [AHC's] employ."  (ECF No. 1 ¶ 19.)  Presumably, this will include evidence such as time sheets and pay stubs.  In contrast, AHC's counterclaim will rely on Mr. Ramirez's "Application for Employment" (ECF No. 5 at 9 ¶ 5), along with Mr. Ramirez's "I-9 form, signed under oath, attesting that he was a 'lawful permanent resident'" and his "Permanent Resident Card," (*Id.* ¶ 6).  AHC may also rely on records that show that Mr. Ramirez's termination caused AHC to lose a contract and other business opportunities.  (*Id.* at 10 ¶ 12.)

The Court finds that Mr. Ramirez's claims and AHC's counterclaim cannot be supported or refuted by substantially the same evidence.  Thus, this inquiry also weighs against finding that AHC's counterclaim is compulsory.

Fourth and finally, the only logical relationship between Mr. Ramirez's claims and AHC's counterclaim is the parties' employee-employer relationship. This connection alone, however, does not justify labeling the counterclaim as compulsory. "Federal courts have been reluctant to exercise supplemental jurisdiction over state law claims and counterclaims in the context of a FLSA suit where the only connection is the employee-employer relationship." *Williams*, 558 F. Supp. 2d at 604 (collecting cases). Aside from this relationship, there is no logical connection between Mr. Ramirez's claims for unpaid wages and AHC's counterclaim for fraud. Thus, this fourth inquiry weighs against finding that AHC's counterclaim is compulsory.

The Court also notes that, "[g]enerally speaking, courts have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused." *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010). A plaintiff's FLSA claim is intended to bring an employer "into compliance with the Act by enforcing a public right," and "[t]o permit [the employer] in such a proceeding to try [its] private claims, real or imagined, against [its] employees would delay and even subvert the whole process." *Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983). While the Court does not rest its holding on this reasoning, these public policy considerations are compelling.

For these reasons, the Court finds that, as presently situated, AHC has introduced a permissive counterclaim.[2] The key inquiry, then, is whether the Court may exercise supplemental jurisdiction over a permissive counterclaim that has no independent basis for federal jurisdiction.

---

[2] The Court does not address whether AHC's counterclaim could later become compulsory if Mr. Ramirez amends his complaint. Mr. Ramirez's motion to dismiss alludes to the possibility that AHC's contested counterclaim may give rise to a new cause of action by Mr. Ramirez, alleging retaliation under the FLSA. (ECF No. 8 at 6-8.) If Mr. Ramirez pursues such a retaliation claim, any amended complaint would surely introduce new law and facts into the case, which could alter the Court's compulsory counterclaim analysis discussed *supra*.

## 2.  Exercise of Supplemental Jurisdiction Over Permissive Counterclaims

Both parties appear to agree that the Court may only exercise jurisdiction over AHC's counterclaim if it is deemed compulsory.  (*See* ECF No. 8 at 9 ("In order for this Court to have supplemental jurisdiction over Defendant's counterclaim, Defendant's counterclaim must be compulsory."); ECF No. 10 at 14 (AHC does not argue that the Court may also have jurisdiction over permissive counterclaims; instead, AHC limits its argument to contending that AHC's counterclaim is compulsory.).)

Still, the Court's independent review of this question revealed that certain federal courts outside of the Fourth Circuit have held that Congress expanded the scope of supplemental jurisdiction when it enacted 28 U.S.C. § 1367.  In 1990, Congress codified and combined the common law concepts of ancillary and pendent jurisdiction, extending supplemental jurisdiction to all claims related to the original action that "form part of the same case or controversy under Article III of the United States Constitution."  *Id.*  The United States Courts of Appeals for the First, Second, and Seventh Circuits have all found that this language extends supplemental jurisdiction to the limits of the Constitution.  *See Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71 (1st Cir. 2010); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212 (2d Cir. 2004); *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996); *cf. Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 990 (3d Cir. 1984).  Based on this broad reading of § 1367, these courts have held that federal courts may exercise supplemental jurisdiction over permissive counterclaims under some circumstances.

The Fourth Circuit has traditionally held that "[i]f the counterclaim is compulsory, it is within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required.  If the counterclaim is permissive, however, it must have its own

independent jurisdictional basis." *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988); *see also Sue & Sam Mfg. Co. v. B-L-S Const. Co.*, 538 F.2d 1048, 1051 (4th Cir. 1976) ("[A] permissive counterclaim must have an independent jurisdictional basis . . . ."). The Fourth Circuit has not reaffirmed these decisions since 1988, two years before § 1367 was enacted. *See O'Fay v. Sessoms & Rogers, P.A.*, 2010 WL 9478988, at *5 (E.D.N.C. 2010) (questioning whether the law of *Painter* and *Sue & Sam Mfg.* still stands after the enactment of § 1367).

The Court holds that, until the United States Court of Appeals for the Fourth Circuit abrogates its decisions in *Painter* and *Sue & Sam Mfg.*, federal courts may not exercise supplemental jurisdiction over permissive counterclaims. This remains the law in the Fourth Circuit. *See, e.g.*, *Whyte v. PP&G*, 2014 WL 1340194, at *4 (D. Md. 2014) (applying the Fourth Circuit's compulsory-permissive distinction and citing to *Painter*); *O'Fay*, 2010 WL 9478988, at *5 (same); *Williams*, 558 F. Supp. 2d at 603 (same).

AHC's counterclaim must be dismissed for lack of jurisdiction. As discussed in Section C.1., AHC has raised a permissive counterclaim. Moreover, AHC's counterclaim does not have an independent basis for jurisdiction: Mr. Ramirez and AHC are both citizens of Maryland so the Court does not have diversity jurisdiction over AHC's counterclaim, and AHC's counterclaim for common law fraud does not raise a federal question. Thus, because the counterclaim is permissive and does not present an independent basis for federal jurisdiction, the Court must dismiss AHC's counterclaim.

D.     **CONCLUSION**

Having found that the Court lacks jurisdiction over AHC's counterclaim, the Court need not consider Mr. Ramirez's alternative motion to dismiss for failure to state a claim.

Accordingly, an order shall issue GRANTING Mr. Ramirez's Motion to Dismiss for lack of jurisdiction (ECF No. 8).

DATED this 25th day of November, 2014.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge